FILED ───── ENTERED
───── LOGGED ───── RECEIVED

MAR 27 2017

AT GREENBELT
CLERK, U.S. DISTRICT COURT
BY DISTRICT OF MARYLAND
DEPUTY

RDM/WDM/LKEK: USAO 2016R00595

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA    * | |
|                       * | |
|       v.              * | CRIMINAL NO. PX 16-0444 |

JOSE AUGUSTIN SALMERON-    *    (Conspiracy to Participate in a
    LARIOS                      *    Racketeering Enterprise, 18 U.S.C.
    a/k/a "Joseph Morales-Martinez,"    *    § 1962(d); Conspiracy to Commit
    a/k/a "Angel Salvador Gutierrez,"    *    Murder in Aid of Racketeering,
    a/k/a "Yankee,"                  *    18 U.S.C. § 1959(a)(5); Attempted
    a/k/a "Kean,"                    *    Murder in Aid of Racketeering,
NOE COREAS-MEJIA,           *    18 U.S.C. § 1959(a)(5); Use, Carry,
    a/k/a "Tsunami,"               *    Brandish, and Discharge a Firearm
OSCAR ERNESTO DELGADO-    *    During and in Relation to a Crime
    PEREZ                       *    of Violence, 18 U.S.C. § 924(c);
    a/k/a "Indio,"                   *    Murder in Aid of Racketeering,
    a/k/a "Complicado,"          *    18 U.S.C. § 1959(a)(1); Conspiracy
JUAN CARLOS ESPINAL-       *    to Distribute and to Possess with
RAPALO,                      *    Intent to Distribute Controlled
    a/k/a "Chiki,"                  *    Substances, 21 U.S.C. § 846;
DANIEL ADONAI RAMOS-      *    Transfer of Firearm for Use in Crime
ROMERO,                     *    of Violence, 18 U.S.C § 924(h); Murder
    a/k/a "Taylor Romero,"      *    Resulting from the Use, Carrying,
    a/k/a "Binga," and          *    Brandishing, and Discharging of a
KEVIN HENRIQUEZ-CHAVEZ,    *    Firearm During and in Relation to a
    a/k/a "Loco,"                 *    Crime of Violence, 18 U.S.C. § 924(j);
    a/k/a "Crazy,"                *    Conspiracy to Use and Carry Firearm
                             *    During Crime of Violence, 18 U.S.C.
            Defendants          *    § 924(o); Witness Tampering, 18
                             *    U.S.C. § 1512(a)(2)(C); Aiding and
                             *    Abetting, 18 U.S.C. § 2; Forfeiture,
                             *    18 U.S.C. § 924(d), 21 U.S.C. § 853,
                             *    28 U.S.C. § 2461(c))
                             *

*******

### SECOND SUPERSEDING INDICTMENT

### COUNT ONE
(Conspiracy to Participate in a Racketeering Enterprise)

The Grand Jury for the District of Maryland charges that:

At all times relevant to this Second Superseding Indictment:

## Introduction

1.  *La Mara Salvatrucha*, also known as the MS-13 gang ("MS-13"), was a gang composed primarily of immigrants or descendants of immigrants from El Salvador, with members operating in the State of Maryland, including in Montgomery County, Prince George's County, and Frederick County, and throughout the United States.

2.  The name "Mara Salvatrucha" was a combination of several slang terms. The word "Mara" was the term used in El Salvador for "gang." The phrase "Salvatrucha" was a combination of the words "Salva," which was an abbreviation for "Salvadoran," and "trucha," which was a slang term for "fear us," "look out," or "heads up."

3.  In the United States, MS-13 has been functioning since at least the 1980s. MS-13 originated in Los Angeles, California, where MS-13 members banded together for protection against the larger Mexican groups. MS-13 evolved into a gang that engaged in turf wars for the control of drug distribution locations. MS-13 quickly spread to states across the country, including Maryland.

4.  MS-13 was a national and international criminal organization and was one of the largest street gangs in the United States. Gang members actively recruited members, including juveniles, from communities with a large number of Salvadoran immigrants.

5.  **JOSE AUGUSTIN SALMERON-LARIOS, a/k/a "Joseph Morales-Martinez," a/k/a "Angel Salvador Gutierrez," a/k/a "Yankee," a/k/a "Kean," (SALMERON-LARIOS); NOE COREAS-MEJIA, a/k/a "Tsunami," (COREAS-MEJIA); OSCAR ERNESTO DELGADO-PEREZ, a/k/a "Indio" a/k/a "Complicado"; JUAN**

2

**CARLOS ESPINAL-RAPALO, a/k/a "Chiki"; DANIEL ADONAI RAMOS-ROMERO, a/k/a "Taylor Romero," a/k/a "Binga"; and KEVIN HENRIQUEZ-CHAVEZ, a/k/a "Loco," a/k/a "Crazy,"** were members and associates of MS-13.

6.      Members of MS-13 from time to time signified their membership by wearing tattoos reading "MARA SALVATRUCHA," "MS," "MS-13," or similar tattoos, often written in gothic lettering. Members also signified their membership through tattoos of devil horns in various places on their bodies. Members and associates sometimes avoided conspicuous MS-13 tattoos, instead wearing discreet ones such as "503," spider webs, three dots in a triangle formation signifying "mi vida loca," or clown faces with phrases such as "laugh now, cry later." Some MS-13 members and associates have chosen not to have tattoos at all, or to have them placed on areas such as the hairline where they can be easily covered, in order to conceal their gang affiliation from law enforcement.

7.      The gang colors of MS-13 were blue, black, and white, and members often wore clothing, particularly sports jerseys, with the number "13," or with numbers that, when added together, totaled 13, such as "76." MS-13 members and associates also wore blue and white clothing to represent their allegiance, including blue and white shoes such as the Nike "Cortez." As with tattoos, some MS-13 members and associates have selected more discreet ways of dressing in order to signify their membership and at the same time, avoid detection by law enforcement.

8.      MS-13 members and associates referred to one another by their "gang names," or monikers, and often did not know fellow gang members and associates except by their monikers.

9.      Members and associates of MS-13 were expected to protect the name, reputation, and status of the gang from rival gang members and other persons. MS-13 members required

that all individuals show respect and deference to the gang and its membership. To protect the gang and to enhance its reputation, MS-13 members and associates were expected to use any means necessary to force respect from those who showed disrespect, including acts of intimidation and violence. MS-13's creed was based on one of its mottos, "*Mata, roba, viola, controlla*," which translated in sum and substance to, "kill, steal, rape, control."

10.     Members and associates of MS-13 frequently engaged in criminal activity, including, but not limited to, murder, assault, and extortion, as well as attempts and conspiracies to commit such offenses. MS-13 members and associates were required to commit acts of violence to maintain membership and discipline within the gang, as well as against rival gang members. Participation in criminal activity by a member or associate, particularly in violent acts directed at rival gangs or as directed by gang leadership, increased the respect accorded to that member or associate, resulted in that member or associate maintaining or increasing his position in the gang, and opened the door to a promotion to a leadership position. One of the principal rules of MS-13 was that its members, and persons seeking to become members, must attack and kill rivals whenever possible. Rivals were often referred to as "chavalas." MS-13, in the areas of Prince George's County and Montgomery County, Maryland, maintained rivalries with the 18th Street Gang, Latin Kings, Adelphi Crew, and Lewisdale Crew, among others.

11.     Prospective members who sought to join MS-13 were required to complete an initiation process. Individuals who associated with and were friends of the gang were called "paisas." Individuals who did favors and other acts for the gang were called "paros." Persons being observed by the gang for potential membership were known as "observations." Individuals who had advanced to the final level before being "jumped in" were called

"chequeos," or "cheqs."[1] Chequeos underwent a probationary period during which they were required to commit crimes on behalf of MS-13 to achieve trust and prove their loyalty to the gang. To join MS-13 and become full members or "homeboys," prospective members were required to complete an initiation process, often referred to as being "jumped in" or "beat in" to the gang. During that initiation, other members of MS-13 would beat the new member, usually until a gang member finished counting aloud to the number thirteen, representing the "13" in MS-13.

12. MS-13 was an international criminal organization, and was organized in Maryland and elsewhere into "cliques," that is, smaller groups operating in a specific city or region. Cliques operated under the umbrella rules of MS-13. MS-13 cliques often worked together cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement. In Maryland and the surrounding area, these cliques included Parkview Locos Salvatrucha ("PVLS"), Normandie Locos Salvatrucha ("NLS" or "Normandie"), Sailors Locos Salvatrucha Westside ("SLSW" or "Sailors"), Langley Park Salvatrucha ("LPS"), Weedoms Locos Salvatrucha ("Weedoms"), and Cabanas Locos Salvatruchas ("Cabanas").

13. **SALMERON-LARIOS** was a member and associate of the PVLS Clique of MS-13; **COREAS-MEJIA** was a member and associate of the PVLS Clique of MS-13; **DELGADO-PEREZ** was a member and associate of the SLSW clique of MS-13; **ESPINAL-RAPALO, RAMOS-ROMERO**, and **HENRIQUEZ-CHAVEZ** were members and associates of the Cabanas Clique of MS-13.

---

[1]     The terms "MS-13 associate" or "associate of MS-13" are used broadly in this Second Superseding Indictment and include persons known as paisas, paros, observations, and chequeos.

5

14.     Each clique was presided over by the "First Word," the leader or president of the clique.   The leader was also referred to as "Primera Palabra," or "Shotcaller."   The "Second Word," or "Segundo Palabra," was the second-in-command of the clique.   General members were required to take orders from the First Word and Second Word.

15.     MS-13 cliques kept in contact and reported to the supreme Shotcallers for their respective cliques, who were oftentimes based in El Salvador.   Cliques contacted their leaders based in El Salvador using cellular telephones during clique meetings to keep them updated on gang business, for advice, and to resolve disagreements regarding operations among local cliques.   Incarcerated clique leaders based in El Salvador regularly communicated and directed orders to Maryland-based cliques through phones smuggled into Salvadoran prisons.

16.     MS-13 members and associates met on a regular basis to, among other things, discuss gang affairs and report on acts of violence committed by their members, with the goal of inciting and encouraging further violence.   Each clique held clique meetings where business specific to that clique was discussed.   Any perceived indiscretions by members and associates or violations of MS-13 rules were talked about at clique meetings and punishments or "violations" were issued.   Violations often took the form of beatings by fellow MS-13 members.   More serious violations resulted in the issuance of a "greenlight."   A greenlight was an order and/or approval to kill.

17.     MS-13 leaders from various cliques also held regional meetings to discuss issues between cliques and discuss criminal ventures among the cliques.   Clique leaders from across the United States, from other countries, and within regions of the United States would meet or communicate by telephone conference to discuss gang rules and gang business, to resolve

problems or issues among cliques and gang members of different cliques, and to unite gang members from across the country.

18.  MS-13 cliques would combine and work together for various purposes known as "programs." A person within the participating cliques would be selected as program leader. **SALMERON-LARIOS** was a leader within MS-13 in Maryland and served as the Maryland program leader.

19.  MS-13 received money and income from sources including member dues and the extortion or "taxing" of brothels and other illegitimate businesses.  Such funds were used for gang purposes, including obtaining weapons and providing support for MS-13 gang members who were imprisoned in the United States, both inside and outside of Maryland, and in El Salvador.

20.  MS-13 members and associates communicated about gang activities with other MS-13 members and associates in Maryland and elsewhere using mobile telephones, telephone text messages, social media such as Facebook and e-mail accounts, and other modes of communication.  Additionally, MS-13 members and associates used transnational and international money wire transfers to conduct and promote gang activities.

### The Racketeering Enterprise

21.  MS-13, including its leadership, membership, and associates, constituted an enterprise as defined in 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce ("the Enterprise").  The Enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

7

## Purposes of the Enterprise

22.     The purposes of the Enterprise included:

a.     Preserving and protecting the power, territory, and profits of the Enterprise through the use of intimidation and violence, including assaults, murders, and threats of violence;

b.     Promoting and enhancing the Enterprise and its members' and associates' activities;

c.     Enriching the members and associates of the Enterprise through extortion and the distribution of controlled substances;

d.     Keeping victims and potential witnesses in fear of the Enterprise and in fear of its members and associates through threats of violence and actual violence; and

e.     Providing assistance to members and associates in order to hinder, obstruct, and prevent law enforcement officers from identifying offenders, apprehending offenders, and trying and punishing offenders.

## Means and Methods of the Enterprise

23.     Among the means and methods by which the defendants and others conducted and participated in the affairs of the Enterprise were the following:

a.     Members and associates of the Enterprise used, attempted to use, and conspired to use extortion;

b.     Members and associates of the Enterprise obtained and distributed controlled substances;

c.     Members and associates of the Enterprise committed, attempted, and threatened to commit acts of violence, including murder, to protect and expand the Enterprise's criminal operations;

d.     Members and associates of the Enterprise promoted a climate of fear through violence and threats of violence; and

e.     Members and associates of the Enterprise used and threatened to use physical violence against various individuals.

### The Racketeering Conspiracy

24.     Beginning on a date unknown to the Grand Jury, but at least prior to in or about 2015, and continuing through at least in or about 2017, in the District of Maryland and elsewhere,

**JOSE AUGUSTIN SALMERON-LARIOS,**
**a/k/a "Joseph Morales-Martinez,"**
**a/k/a "Angel Salvador Gutierrez,"**
**a/k/a "Yankee,"**
**a/k/a "Kean,"**
**NOE COREAS-MEJIA,**
**a/k/a "Tsunami,"**
**OSCAR ERNESTO DELGADO-PEREZ**
**a/k/a "Indio,"**
**a/k/a "Complicado,"**
**JUAN CARLOS ESPINAL-RAPALO,**
**a/k/a "Chiki,"**
**DANIEL ADONAI RAMOS-ROMERO,**
**a/k/a "Taylor Romero,"**
**a/k/a "Binga," and**
**KEVIN HENRIQUEZ-CHAVEZ,**
**a/k/a "Loco,"**
**a/k/a "Crazy,"**

being persons employed by and associated with MS-13, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, together with others known and unknown to the Grand Jury, did knowingly and intentionally conspire to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. §§ 1961(1) and (5), which pattern of racketeering activity consisted of multiple acts: (1) involving murder, in violation of Maryland Code,

Criminal Law §§ 2-201, 2-204, 2-205, and 2-206, and the Common Law of Maryland,

punishable pursuant to Maryland Code, Criminal Law §§ 1-201, 1-202, 2-201, 2-204, 2-205, and

2-206; (2) involving extortion, in violation of Maryland Code, Criminal Law §§ 3-701 and 3-

705, and the Common Law of Maryland; (3) involving robbery, in violation of Maryland Code,

Criminal Law §§ 3-402 and 3-403, and the Common Law of Maryland; (4) indictable under 18

U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant); and, (5) multiple

offenses involving drug trafficking in violation of 21 U.S.C. §§ 841 and 846.

25.     It was part of the conspiracy that each defendant agreed that a conspirator would

commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

## Manner and Means of the Racketeering Conspiracy

26.     Among the manners and means used by the defendants and their co-conspirators

to achieve the objects of the conspiracy were the following:

a.     MS-13 members and associates met and communicated about, among

other things: the structure and organization of the gang; past criminal acts committed against

rival gang members and others; MS-13 members and associates who were arrested or

incarcerated; the disciplining of MS-13 members and associates; police interactions with MS-13

members and associates; the identities of individuals suspected of cooperating with law

enforcement and the proposed actions to be taken against them; plans and agreements regarding

the commission of future crimes, as well as ways to conceal these crimes; and the enforcement of

gang rules.

b.     MS-13 members and associates agreed to purchase, maintain, and

circulate weapons and firearms for use in criminal activity by MS-13 members.

c.     MS-13 members and associates received money and income from sources including the extortion of persons engaged in business activities, and the distribution of controlled substances. Such funds were used for gang purposes such as obtaining weapons and providing support for MS-13 gang members, including those imprisoned in the United States (inside and outside of Maryland) and in El Salvador.

d.     MS-13 members and associates agreed that acts of violence, including murder and attempted murder, would be committed by members and associates of MS-13 against rival gang members and others when it suited the Enterprise's purposes. MS-13 members and associates also used violence to impose discipline within the gang.

e.     MS-13 members and associates would obstruct justice and harm, threaten, and intimidate witnesses and victims who cooperated with law enforcement.

f.     MS-13 members and associates would investigate rival gang members or other persons targeted for violence; would obtain information about such targets, including locations frequented by them; and would use such information in their plans to attack such targets.

g.     MS-13 members and associates agreed that acts involving murder, including conspiracy and attempts to commit murder, and other acts of violence, would be committed by members and associates of MS-13 against rival gang members and persons deemed as threats to MS-13 and for the purpose of imposing discipline within the gang, and on other occasions as deemed necessary.

## Overt Acts

27.     In furtherance of the conspiracy, and to effect the illegal object thereof, the defendants and their co-conspirators performed, participated in, and did the following acts, among others, in the District of Maryland and elsewhere:

a.      Between in or about January 2015 through in or about December 2015, in the Hyattsville area of Prince George's County, Maryland, **COREAS-MEJIA** and other MS-13 members and associates extorted sums of money from Victim-1.

b.      Between in or about January 2015 through in or about December 2015, in the Hyattsville area of Prince George's County, Maryland, **COREAS-MEJIA** and other MS-13 members and associates extorted sums of money from Victim-2.

c.      In or about April 2015, MS-13 members and associates, including **SALMERON-LARIOS**, traveled to New York, met with MS-13 members there and discussed MS-13 business.

d.      On or about October 20, 2015, in the area of 18220 Contour Road, Gaithersburg, Maryland, **ESPINAL-RAPALO**, along with two other members and associates of the MS-13 gang, assaulted Victim-3, including by punching Victim-3 in the face, and robbed Victim-3 of a Chicago Bulls baseball hat, a backpack, and a pair of Apple EarPods.

e.      On or about November 1, 2015, **ESPINAL-RAPALO**, **RAMOS-ROMERO**, **HENRIQUEZ-CHAVEZ**, and another member and associate of the Cabanas Clique of MS-13, planned to kill Victim-3 because they believed Victim-3 to be associated with the 18th Street gang, a rival of MS-13.

f.      On or about November 1, 2015, **ESPINAL-RAPALO** brought a firearm, to wit, a Smith and Wesson .22 caliber revolver, model 22 Long Rifle CTG, bearing serial

number 37870, to the wooded area behind South Lake Elementary School, located at 18201 Contour Road, Montgomery Village, Maryland.

g.      On or about November 1, 2015, **ESPINAL-RAPALO, RAMOS-ROMERO**, and another member and associate of the Cabanas Clique of MS-13, lured Victim-3 into the wooded area behind South Lake Elementary School with the promise of smoking marijuana and having sex with a female.

h.      On or about November 1, 2015, **ESPINAL-RAPALO** and **RAMOS-ROMERO** each shot at Victim-3, striking Victim-3 four times and killing Victim-3.

i.      On or about November 1, 2015, **ESPINAL-RAPALO** wrapped the Smith and Wesson .22 caliber revolver used in the killing of Victim-3 in **ESPINAL-RAPALO's** own shirt and then in Victim-3's jacket, and hid the firearm in the woods.

j.      On or about November 2, 2015, **RAMOS-ROMERO** fled Maryland and went to Virginia.

k.      In or about November 2015, MS-13 members and associates, including **SALMERON-LARIOS**, planned to kill Victim-4.

l.      In or about November 2015, MS-13 members and associates communicated with Victim-4 and tricked Victim-4 into believing that Victim-4 was communicating with a female.

m.      On or about November 7, 2015, MS-13 members lured Victim-4 to a location in the Hyattsville area of Prince George's County, Maryland under the guise that a female would be meeting with Victim-4 at that location.

n.        On or about November 7, 2015, MS-13 members and associates armed with firearms, including **SALMERON-LARIOS**, traveled to the location in the Hyattsville area for the purpose of killing Victim-4.

o.        On or about November 7, 2015, while in the company of **SALMERON-LARIOS**, an MS-13 associate attempted to murder Victim-4 and Victim-5.

p.        On or about November 28, 2015, in the Hyattsville area of Prince George's County, **COREAS-MEJIA** and other MS-13 members and associates assaulted Victim-6 by holding a disciplinary proceeding known as "court" for Victim-6, whereby Victim-6 was beaten by MS-13 members and associates while **COREAS-MEJIA** counted.

q.        On or about December 6, 2015, in the Hyattsville area of Prince George's County, **COREAS-MEJIA** and other MS-13 members and associates forced Victim-2 to attempt to cash a check Victim-2 believed to be forged with the intention of receiving the proceeds of the forged cashed check.

r.        On or about December 9, 2015, in the Hyattsville area of Prince George's County, **COREAS-MEJIA** and other MS-13 members and associates attempted to collect proceeds of the forged check from Victim-2.

s.        In or about December 2015, **COREAS-MEJIA** and other MS-13 members and associates planned to murder Victim-6 in retaliation for Victim-6 reporting to police that he had been assaulted by **COREAS-MEJIA** and other MS-13 members and associates.

t.        On or about December 16, 2015, **COREAS-MEJIA** and other MS-13 members and associates lured Victim-6 to a secluded area beneath an Interstate 495 overpass in the Silver Spring area of Montgomery County, Maryland, for the purpose of killing Victim-6.

u.      On or about December 16, 2015, **COREAS-MEJIA** and other MS-13 members and associates murdered Victim-6 in the secluded area beneath the Interstate 495 overpass, to which they had lured Victim-6.

v.      On or about December 16, 2015, **COREAS-MEJIA** and other MS-13 members and associates, fled the murder scene, leaving the body of Victim-6 submerged in a stream, and thereafter **COREAS-MEJIA** and other MS-13 members and associates concealed evidence of the crime.

w.      In or about January 2016, **SALMERON-LARIOS** traveled to Florida and obtained firearms for the use of MS-13 members in Maryland.

x.      In or about February 2016, in the Hyattsville area of Prince George's County, Maryland, **SALMERON-LARIOS** and other MS-13 members inflicted a disciplinary beating upon other MS-13 members.

y.      In or about March 2016, in the area of Prince George's County, Maryland, while traveling in an automobile with other MS-13 members, **SALMERON-LARIOS** possessed and displayed a handgun.

z.      On or about June 8, 2016, **SALMERON-LARIOS** made arrangements for the delivery of a firearm to other MS-13 members, which firearm was to be used to attack and kill persons believed to be rival gang members.

aa.     Between in or about 2015 and in or about 2016, **SALMERON-LARIOS** collected "rent" or extortion money from illegal businesses for and on behalf of MS-13 at locations in or around Prince George's County Maryland, including in area of Laurel, Maryland.

bb.     Between in or about March 2016 and June 2016, **DELGADO-PEREZ** and MS-13 members and associates distributed quantities of controlled substances in the Gaithersburg area of Montgomery County, Maryland.

cc.     In or around June of 2016, in the Gaithersburg area of Montgomery County, **DELGADO-PEREZ** and other MS-13 members and associates imposed a disciplinary beating upon a MS-13 associate.

dd.     In or about June of 2016, in the Gaithersburg area of Montgomery County, **DELGADO-PEREZ** and MS-13 members and associates planned to murder Victim-7.

ee.     Pursuant to the plan, on or about June 16, 2016, MS-13 members and associates, including **DELGADO-PEREZ**, directed a MS-13 associate to lure Victim-7 to a wooded area in the Gaithersburg area of Montgomery County.

ff.     On or about June 16, 2016, in the Gaithersburg area of Montgomery County, **DELGADO-PEREZ** and other MS-13 members and associates murdered Victim-7.

gg.     On or about a date after October 11, 2016, but prior to on or about November 1, 2016, in the District of Maryland, **HENRIQUEZ-CHAVEZ** was in immigration custody with Victim-8. **HENRIQUEZ-CHAVEZ** told Victim-8, in sum and substance, that **HENRIQUEZ-CHAVEZ** knew that Victim-8 had been in protective custody with **ESPINAL-RAPALO** in the Montgomery County Detention Center in Clarksburg, Maryland, stated that **ESPINAL-RAPALO** was a "rat," and asked whether Victim-8 was also a "rat." **HENRIQUEZ-CHAVEZ** told Victim-8 that **ESPINAL-RAPALO** had a "green light" because it was believed **ESPINAL-RAPALO** had cooperated with law enforcement. **HENRIQUEZ-CHAVEZ** told Victim-8 that if Victim-8 did not prove that Victim-8 was not cooperating with law enforcement, Victim-8 and Victim-8's family would be killed. Victim-8 told

**HENRIQUEZ-CHAVEZ** that Victim-8 no longer wished to be associated with MS-13.

**HENRIQUEZ-CHAVEZ** then told Victim-8 that Victim-8 had to have "court" there in the jail

cell. **HENRIQUEZ-CHAVEZ** and three other members and associates of MS-13 then beat

Victim-8 to the count of thirteen.

        hh.    In or around November and December 2016, in Baltimore, Maryland,

**DELGADO-PEREZ** attempted to have a "green light" imposed against a MS-13 associate that

**DELGADO-PEREZ** believed had cooperated with law enforcement.

<u>**Special Sentencing Factors Regarding Count One**</u>

        28.    On or about November 1, 2015, in the District of Maryland, **ESPINAL-**

**RAPALO**, **RAMOS-ROMERO**, and **HENRIQUEZ-CHAVEZ** unlawfully conspired with

others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately

premeditated malice, murder Victim-3, in violation of Maryland Code, Criminal Law § 2-

201(a)(1), and the Common Law of Maryland, and punishable pursuant to Maryland Code,

Criminal Law § 1-202.

        29.    On or about November 1, 2015, in the District of Maryland, **ESPINAL-**

**RAPALO** and **RAMOS-ROMERO** feloniously, willfully, and with deliberately premeditated

malice, murdered Victim-3, in violation of Maryland Code, Criminal Law § 2-201(a)(1).

        30.    In or about November 2015, in the District of Maryland, **SALMERON-LARIOS**

unlawfully conspired with others known and unknown to the Grand Jury to feloniously,

willfully, and with deliberately premeditated malice, murder Victim-4, in violation of Maryland

Code, Criminal Law § 2-201(a)(1), and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

31.     On or about November 7, 2015, in the District of Maryland, **SALMERON-LARIOS** feloniously, willfully, and with deliberately premeditated malice, attempted to murder Victim-4 and Victim-5, in violation of Maryland Code, Criminal Law §§ 2-201(a)(1), and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 2-205.

32.     Between on or about December 1, 2015 through on or about December 16, 2015, in the District of Maryland, **COREAS-MEJIA** unlawfully conspired with others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, murder Victim-6, in violation of Maryland Code, Criminal Law § 2-201(a)(1), and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

33.     On or about December 16, 2015, in the District of Maryland, **COREAS-MEJIA** feloniously, willfully, and with deliberately premeditated malice, murdered Victim-6, in violation of Maryland Code, Criminal Law § 2-201(a)(1).

34.     In or around June 15, 2016 and June 16, 2016, in the District of Maryland, **DELGADO-PEREZ** unlawfully conspired with others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, murder Victim-7, in violation of Maryland Code, Criminal Law § 2-201(a)(1), and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

35.     On or about June 16, 2016, in the District of Maryland, **DELGADO-PEREZ** feloniously, willfully, and with deliberately premeditated malice, murdered Victim-7, in violation of Maryland Code, Criminal Law § 2-201(a)(1).

18 U.S.C. § 1962(d)

COUNT TWO

## COUNT TWO
### (Conspiracy to Commit Murder in Aid of Racketeering)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 20, 22 through 23, and 27(k)-(o) of Count One of this Second Superseding Indictment are incorporated here.

2.      MS-13, including its leadership, membership, and associates, constituted an enterprise as defined in 18 U.S.C. § 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce ("the Enterprise"). The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

3.      The Enterprise, through its members and associates, engaged in racketeering activity, as defined in 18 U.S.C. §§ 1959(b)(1), and 1961(1), that is acts involving murder in violation of Maryland Code, Criminal Law §§ 2-201, 2-204, 2-205, and 2-206, and the Common Law of Maryland, punishable pursuant to Maryland Code, Criminal Law §§ 1-201, 1-202, 2-201, 2-204, 2-205, and 2-206; acts involving extortion, in violation of Maryland Code, Criminal Law §§ 3-701 and 3-705, and the Common Law of Maryland; and, multiple offenses involving drug trafficking in violation of 21 USC §§ 841 and 846.

4.      In or about November 2015, in the District of Maryland,

> **JOSE AUGUSTIN SALMERON-LARIOS,**
> **a/k/a "Joseph Morales-Martinez,"**
> **a/k/a "Angel Salvador Gutierrez,"**
> **a/k/a "Yankee,"**
> **a/k/a "Kean,"**

for the purpose of gaining entrance to, and maintaining and increasing position in, MS-13, an enterprise engaged in racketeering activity, did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the Grand Jury to murder Victim-4, in

violation of and punishable pursuant to Maryland Code, Criminal Law §§ 2-201 and 2-204, and

the Common Law of Maryland, all in violation of 18 U.S.C. § 1959(a)(5).


18 U.S.C. § 1959(a)(5)

## COUNT THREE
### (Attempted Murder in Aid of Racketeering)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 20, 22 through 23, and 27(k)-(o) of Count One, and

Paragraphs 2 and 3 of Count Two, of this Second Superseding Indictment are incorporated here.

2. On or about November 7, 2015, in the District of Maryland,

**JOSE AUGUSTIN SALMERON-LARIOS,**
**a/k/a "Joseph Morales-Martinez,"**
**a/k/a "Angel Salvador Gutierrez,"**
**a/k/a "Yankee,"**
**a/k/a "Kean,"**

for the purpose of gaining entrance to, and maintaining and increasing position in, MS-13, an

enterprise engaged in racketeering activity, feloniously, willfully, and with deliberately

premeditated malice, attempted to murder Victim-4 and Victim-5, in violation of Maryland

Code, Criminal Law §§ 2-201, 2-204, 2-205, and 2-206, all in violation of 18 U.S.C.

§ 1959(a)(5).


18 U.S.C. § 1959(a)(5)
18 U.S.C. § 2

## COUNT FOUR
### (Use, Carry, Brandish, and Discharge a Firearm
### During and in Relation to a Crime of Violence)

The Grand Jury for the District of Maryland further charges that:

1.     Paragraphs 1 through 20, 22 through 23, and 27(k)-(o) of Count One of this

Second Superseding Indictment are incorporated here.

2.     On or about November 7, 2015, in the District of Maryland,

**JOSE AUGUSTIN SALMERON-LARIOS,**
**a/k/a "Joseph Morales-Martinez,"**
**a/k/a "Angel Salvador Gutierrez,"**
**a/k/a "Yankee,"**
**a/k/a "Kean,"**

did knowingly, intentionally, and unlawfully use, carry, brandish, and discharge a firearm during

and in relation to a crime of violence for which he may be prosecuted in a court of the United

States, to wit: Attempted Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(5),

as charged in Count Three of this Superseding Indictment, which is incorporated here.


18 U.S.C. § 924(c)(1)(A)(iii)
18 U.S.C. § 2

## COUNT FIVE
### (Conspiracy to Commit Murder in Aid of Racketeering)

The Grand Jury for the District of Maryland further charges that:

1.       Paragraphs 1 through 20, 22 through 23, and 27(p), (s)-(v) of Count One, and

Paragraphs 2 and 3 of Count Two, of this Second Superseding Indictment are incorporated here.

2.       Beginning on or about December 1, 2015 and continuing through on or about

December 16, 2015, in the District of Maryland,

### NOE COREAS-MEJIA,
**a/k/a "Tsunami,"**

for the purpose of gaining entrance to, and maintaining and increasing position in, MS-13, an

enterprise engaged in racketeering activity, did knowingly and willfully combine, conspire,

confederate, and agree with others known and unknown to the Grand Jury to murder Victim-6, in

violation of and punishable pursuant to Maryland Code, Criminal Law §§ 2-201 and 2-204, and

the Common Law of Maryland, all in violation of 18 U.S.C. § 1959(a)(5).

18 U.S.C. § 1959(a)(5)

## COUNT SIX
### (Murder in Aid of Racketeering)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 20, 22 through 23, and 27(p), (s)-(v) of Count One, and

Paragraphs 2 and 3 of Count Two, of this Second Superseding Indictment are incorporated here.

2.      On or about December 16, 2015, in the District of Maryland,

### NOE COREAS-MEJIA,
### a/k/a "Tsunami,"

for the purpose of gaining entrance to, and maintaining and increasing position in, MS-13, an

enterprise engaged in racketeering activity, did murder Victim-6, in violation of and punishable

pursuant to Maryland Code, Criminal Law §§ 2-201 and 2-204, and the Common Law of

Maryland, all in violation of 18 U.S.C. § 1959(a)(1).


18 U.S.C. § 1959(a)(1)
18 U.S.C. § 2

25

## COUNT SEVEN
**(Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances)**

The Grand Jury for the District of Maryland further charges that:

1. Beginning at least in or about March 2016, and continuing through at least on or about August 30, 2016, in the District of Maryland and elsewhere, the defendant,

**JOSE AUGUSTIN SALMERON-LARIOS,**
**a/k/a "Joseph Morales-Martinez,"**
**a/k/a "Angel Salvador Gutierrez,"**
**a/k/a "Yankee,"**
**a/k/a "Kean,"**

did knowingly combine, conspire, confederate, and agree with others, known and unknown to the Grand Jury, to distribute and to possess with the intent to distribute cocaine, a Schedule II controlled substance, and marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841.


21 U.S.C. § 846

## COUNT EIGHT
### (Transfer of Firearm for Use in Crime of Violence)

The Grand Jury for the District of Maryland further charges that:

1.      On or about June 8, 2016 in the District of Maryland, the defendant

**JOSE AUGUSTIN SALMERON-LARIOS,**
**a/k/a "Joseph Morales-Martinez,"**
**a/k/a "Angel Salvador Gutierrez,"**
**a/k/a "Yankee,"**
**a/k/a "Kean,"**

did knowingly transfer a firearm, knowing that such firearm would be used to commit a crime of

violence.


18 U.S.C. § 924(h)
18 U.S.C. § 2

## COUNT NINE
### (Conspiracy to Commit Murder in Aid of Racketeering)

The Grand Jury for the District of Maryland further charges that:

1.       Paragraphs 1 through 20, 22 through 23, and 27 (d)-(j) of Count One, and

Paragraphs 2 and 3 of Count Two, of this Second Superseding Indictment are incorporated here.

2.       Beginning at least in or about October 2015, and continuing through on or about

November 1, 2015, in the District of Maryland,

**JUAN CARLOS ESPINAL-RAPALO,**
**a/k/a "Chiki,"**
**DANIEL ADONAI RAMOS-ROMERO,**
**a/k/a "Taylor Romero,"**
**a/k/a "Binga," and**
**KEVIN HENRIQUEZ-CHAVEZ,**
**a/k/a "Loco,"**
**a/k/a "Crazy,"**

for the purpose of gaining entrance to, and maintaining and increasing position in, MS-13, an

enterprise engaged in racketeering activity, did knowingly and willfully combine, conspire,

confederate, and agree with others known and unknown to the Grand Jury to murder Victim-3, in

violation of and punishable pursuant to Maryland Code, Criminal Law §§ 2-201 and 2-204, and

the Common Law of Maryland, all in violation of 18 U.S.C. § 1959(a)(5).


18 U.S.C. § 1959(a)(5)

## COUNT TEN
### (Conspiracy to Use and Carry Firearm During Crime of Violence)

The Grand Jury for the District of Maryland charges that:

1.      On or about November 1, 2015, in the District of Maryland, the defendants,

**JUAN CARLOS ESPINAL-RAPALO,**
**a/k/a "Chiki," and**
**DANIEL ADONAI RAMOS-ROMERO,**
**a/k/a "Taylor Romero,"**
**a/k/a "Binga,"**

did knowingly and unlawfully conspire with each other and other persons, known and unknown

to the Grand Jury, to knowingly, intentionally, and unlawfully use and carry a firearm during and

in relation to a crime of violence for which they may be prosecuted in a court of the United

States, to wit: Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(1).

18 U.S.C. § 924(o)

## COUNT ELEVEN
### (Witness Tampering)

The Grand Jury for the District of Maryland charges that:

1.      On or about a date after October 11, 2016, but prior to on or about November 1,

2016, in the District of Maryland, the defendant,

### KEVIN HENRIQUEZ-CHAVEZ,
#### a/k/a "Loco,"
#### a/k/a "Crazy,"

used physical force and the threat of physical force against Victim-8 and Victim-8's family, with

the intent to hinder, delay, and prevent the communication to a law enforcement officer, of

information relating to the commission of a federal offense, namely, Conspiracy to Participate in

a Racketeering Enterprise, in violation of 18 U.S.C. § 1962(d), and Murder in Aid of

Racketeering, in violation of 18 U.S.C. § 1959(a)(1).


18 U.S.C. § 1512(a)(2)(C)
18 U.S.C. § 2

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 924(d), 21 U.S.C. § 853, and 28 U.S.C. § 2461(c), in the event of the defendants' conviction under Count Ten of this Second Superseding Indictment.

2.      Pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), upon conviction of the offense alleged in Count Ten of this Second Superseding Indictment, the defendants,

**JUAN CARLOS ESPINAL-RAPALO,**
**a/k/a "Chiki," and**
**DANIEL ADONAI RAMOS-ROMERO,**
**a/k/a "Taylor Romero,"**
**a/k/a "Binga,"**

shall forfeit to the United States any firearm and ammunition involved or used in such offense, including but not limited to a Smith and Wesson .22 caliber revolver, model 22 Long Rifle CTG, bearing serial number 37870.


18 U.S.C. § 924(d)
21 U.S.C. § 853
28 U.S.C. § 2461(c)


Rod J. Rosenstein / WDM

Rod J. Rosenstein
United States Attorney


A TRUE BILL:

**SIGNATURE REDACTED**

Date: 3-27-17

Foreperson